IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HILTON I. WESLEY,<br><br>          Plaintiff,<br>   v.<br><br>ROBERT M. GATES,<br><br>          Defendant.<br>                                                                    / | No. C 08-2719 SI<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING PLAINTIFF'S RULE 56(f) MOTION; RESOLVING OUTSTANDING DISCOVERY DISPUTES; SETTING BRIEFING SCHEDULE ON REMAINING ISSUES; CONTINUING TRIAL DATE** |

On July 31, 2009, the Court heard argument on various motions filed by the parties. For the reasons set forth below, the Court GRANTS IN PART defendant's motion for summary judgment, DENIES IN PART plaintiff's motion for partial summary judgment, GRANTS plaintiff's Rule 56(f) motion, addresses the parties' remaining discovery disputes, and sets a further briefing schedule on the unresolved summary judgment issues. The current trial date of October 13, 2009 is continued to November 2, 2009, subject to counsels' schedule.

**BACKGROUND**

Plaintiff Hilton Wesley was employed as an Auditor GS-0511-11 at the Defense Contract Audit Agency (DCAA), Western Region for 17 years, from September 21, 1987 until February 26, 2006. The position description for Auditor GS-0511-11 states: "Duties – Serves as an auditor on a Participative Work Team (PWT) at a field audit office (FAO) with responsibility for planning, performing, and reporting on a variety of contract audit assignments in connection with procurement and contracting activity between the Federal Government and the contractor. These assignments are typically designed

to increase complexity, develop skill level and test the auditor's ability to independently perform the full range of complex audit assignments at the GS-12 full performance level." Dryovage Decl. Ex. D.

The events giving rise to this lawsuit occurred after plaintiff was transferred to the DCAA East Bay Branch Office located in Fremont, California. The transfer happened in October 2003, and plaintiff was assigned to Doris White's team. In his Spring 2004 performance evaluation, plaintiff was rated "minimally successful" in three of five "critical element" ratings, for an overall rating of "minimally successful." During plaintiff's mid-year progress review issued in November 2004, plaintiff was rated "unacceptable" in four critical element ratings, with an overall rating of "unacceptable." As a result, by memorandum dated November 23, 2004, plaintiff was issued a written "Performance Improvement Plan" ("PIP").

In May 2005, plaintiff was notified that he passed the PIP. However, for the period April 1, 2005 to October 19, 2005, White rated plaintiff "unacceptable" in two critical elements. Plaintiff's second-line supervisor, James Hayes, conducted an independent review and agreed that plaintiff's performance was unacceptable. On November 22, 2005, Hayes issued a proposed removal notice. Plaintiff contacted his third-line supervisor, Steven Paul, and requested to meet with him. Plaintiff also submitted a written response to the proposed removal notice alleging discrimination and stating that he had "disabilities related to congestive heart failure." Carradero Decl. Ex. A32.[1] Plaintiff also disputed his supervisors' negative assessment of his job performance.

Paul assessed plaintiff's work performance for the April 1, 2005-October 19, 2005 time period and also concluded that plaintiff's performance was unacceptable. On January 20, 2006 he issued a removal notice, but then rescinded the notice to allow plaintiff to submit additional information to the agency for consideration regarding plaintiff's removal. On January 25, 2006, plaintiff submitted a medical statement and a request for accommodations. Paul Decl. Ex. 3. Plaintiff requested four accommodations:

> 1. "A transfer to a more reasonable supervisor, who acknowledges my medical impairments, and facilitates my successful job performance by providing timely feedback on my performance as to obviate repetitious errors, and specific training for

---

[1] Plaintiff claims that he suffers from congestive heart failure, type 2 diabetes, high blood pressure, sleep apnea and renal insufficiency.

2

    first time audit assignments and audit preferences."

    2. "A flexible work schedule that permits me to maintain my medical appointments and attend to my healthcare conditions and medicinal adjustment."

    3. "A short term increase in budget audit hours relating to new mobile audit assignments or an outright transfer to a large contract audit environment where typically more time is allocated for each assignment and longer cycle times exist."

    4. "DCAA coordinate with DOR to assess my work environment for less obvious reasonable accommodations that I have overlooked."

*Id.*

On February 6, 2006, Paul issued a 14 page Notice of Decision of Removal of Plaintiff. Paul's decision concluded that plaintiff's job performance was unacceptable, and detailed at length his assessment of plaintiff's work product. Paul Decl. Ex. 4. Paul's decision also addressed plaintiff's request for accommodations. *Id.* at DCAA0483-DCAA0485.

On February 6, 2006, plaintiff filed an EEO complaint alleging race, sex and disability discrimination regarding his removal. After an investigation, the agency issued a final decision on September 18, 2006 concluding there was no discrimination. On October 28, 2006, plaintiff filed an administrative appeal of his removal with the Merit Systems Protection Board ("MSPB"). After a hearing, the MSPB upheld plaintiff's removal. Plaintiff filed this lawsuit on May 30, 2008, alleging claims for "age, race, and disability discrimination, to wit: wrongful discharge, hostile environment, and refusal to provide reasonable accommodation." Compl. ¶ 1. The complaint alleges claims under the Age Discrimination in Employment Act ("ADEA"), Title VII, and the Rehabilitation Act of 1973.

Defendant has filed a motion for summary judgment on all claims. Plaintiff has filed a motion for partial summary judgment on certain of defendant's affirmative defenses. In response to defendant's motion for summary judgment, plaintiff has filed a Rule 56(f) motion. Finally, each side has moved to strike various declarations filed by the other, and objected to numerous pieces of evidence.

## LEGAL STANDARD

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.

3

56(c).

In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

### I. Exhaustion of retaliation and hostile work environment claims

Under Title VII and the Rehabilitation Act, a federal employee alleging discrimination or retaliation must exhaust administrative remedies prior to filing a lawsuit. *See* 29. C.F.R. § 1614.105; *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002). Defendant contends that plaintiff did not exhaust his administrative remedies with respect to his claims for retaliation and hostile work environment/harassment.[2] Plaintiff admits that these claims were not raised in his February 18, 2006 EEO complaint, which alleged age, race, sex and disability discrimination regarding his removal. Carradero Decl. Ex. A42. In response to his EEO claim, plaintiff received a letter dated March 24, 2006 from Rachel Taylor, Regional EEO Manager which stated, *inter alia*,

---

[2] It is unclear whether plaintiff has actually alleged a claim for retaliation. The complaint does not separately list a claim for retaliation, *see* Compl. ¶ 1 (listing claims), and does not allege that he exhausted a retaliation claim. *Id*. ¶ 6.

4

> After a review of your formal complaint of discrimination and the EEO Counselor's Report, I have identified the claims stated below. If these claims are inaccurately stated, please notify me, in writing, within 15 calendar days after receipt of this letter with a corrected statement of the claim(s). This corrected statement must include a brief, <u>but specific</u>, description of correction.
>
> **CLAIM:** Mr. Hilton Wesley alleges that he was discriminated against because of his race (African-American), physical disability (heart and renal disease), age (DOB: July 26, 1951), and/or sex (male) when he was terminated from his position as a GS-511-11 Auditor with the Defense Contract Agency's Western Region, effective February 6, 2006.

Robichau Decl. Ex. A (emphasis in original). Two months later, on May 16, 2006, Marie Robichau, the investigator assigned to investigate plaintiff's EEO complaint, sent plaintiff an email stating, *inter alia*,

> The claim under investigation is:
>
> *Was the Complainant discriminated against on the bases of his race (African-American), physical disability (heart and renal disease), age (DOB: 07-26-51) and/or sex (male) when he was terminated from his position as a GS-511-11 Auditor with the Defense Contract Agency's Western Region, effective February 06, 2006?*

*Id*. Ex. B (emphasis in original). In response to the May 16, 2006 email, plaintiff's then-attorney Hunter Pyle, Esq. wrote a letter to Ms. Robichau expressing his concern that the statement of plaintiff's EEO claim "does not include Mr. Wesley's claims for failure to accommodate and failure to engage in a good faith interactive process." *Id*. Ex. C. At no point during the EEO investigation did plaintiff or his attorney seek to amend plaintiff's claim to include claims for retaliation and/or harassment/hostile work environment. The EEO investigation was completed on September 18, 2006, when the agency issued a final decision finding no discrimination. *Id*. Ex. M at DCAA0727.

Plaintiff contends that he has exhausted his retaliation and harassment claims by raising them in the MSPB appeal. Plaintiff directs the Court to his MSPB Prehearing Submission, dated January 26, 2007, and asserts (without any citation) that in this submission plaintiff "raised the issue that he was subjected to harassment and reprisal for making a request for reasonable accommodation." Pl's Summary Judgment Reply at 2:21-22. The Court has reviewed that entire document, and while the submission repeatedly alleges a hostile work environment, the submission does *not* allege that DOD retaliated against plaintiff. The 15 page submission uses the word "retaliation" once, on page 9, as follows: "This amount [of $100,000 in requested non-pecuniary damages] takes into account the severity and duration of the harm done to Appellant by the DOD's discrimination and retaliation." Docket No.

5

114, Ex. Q. Nowhere in the MSPB submission is there any further reference to retaliation, and there is nothing in the MSPB submission to put the employer on notice of any retaliation claim. *See B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002) ("The administrative charge requirement serves the important purposes of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision."). Accordingly, the Court finds that plaintiff has not exhausted a retaliation claim, and GRANTS defendant's motion for summary judgment and DENIES plaintiff's motion for partial summary judgment as it relates to the retaliation claim.[3]

The Court finds it unnecessary to determine whether plaintiff's MSPB submission exhausted his hostile work environment claim, because even if properly raised, that claim cannot survive summary judgment.[4] At his deposition, plaintiff testified that his supervisor, Doris White, harassed him in the following ways: (1) she "came to my desk at the last minute with my assignments after I had turned the assignments in ahead of time," (2) she did not get back to him on a timely basis, (3) she "commented that folks were down there robbing and that they were some of the dumbest, ignorant people she had seen" when plaintiff talked to White during Hurricane Katrina, and (4) he believed that three auditors had received additional time on their audits and were treated better than plaintiff. Carradero Decl. Ex. A (Wesley depo. at 280:19-286-:21). Plaintiff's summary judgment opposition asserts "Not only did Plaintiff produce evidence that he was subjected to different and worse work rules, inaccurate work evaluations, discipline and discharge due to his age, race and disabilities, but he also provided testimony of similarly situated auditors under the same supervisory chain of command as Plaintiff, who were likewise subjected to discrimination and harassment during the same time period as Plaintiff." Opposition at 25:2-8.

In the Ninth Circuit, courts employ a totality of the circumstances test in determining whether a plaintiff has established a hostile work environment, considering factors such as: "[the] frequency of

---

[3] The Court also DENIES as moot plaintiff's motion to the extent it seeks summary judgment on the affirmative defenses of unclean hands and fraud/misconduct, as defendant is not pursuing those affirmative defenses.

[4] The Court notes that regardless of whether plaintiff's hostile work environment claim was properly presented to the MSPB, the MSPB's decision discussed that claim. *See* Carradero Decl. Ex. M at DCAA0739 n.7. Not surprisingly, there is no discussion in the MSPB decision of a retaliation claim.

6

discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Nichols v. Azteca Rest. Enters. Corp.*, 256 F.3d 864, 872 (9th Cir. 2001). To constitute harassment, the workplace must be both subjectively and objectively abusive. *See Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000). Here, plaintiff does not claim that anyone at DCAA made any derogatory comments to plaintiff based on his age, race, or disability. Similarly, plaintiff's testimony that he was aware that other co-workers felt they experienced discrimination is insufficient to raise a material issue of fact that plaintiff was subject to a hostile work environment. *See Vasquez v. County of Los Angeles*, 349 F.3d 634, 642-43 (9th Cir. 2003); *Sanchez v. City of Santa Ana*, 936 F.2d 1027 (9th Cir. 1990).

*Kortan v. California Youth Authority*, 217 F.3d 1104 (9th Cir. 2000), is also instructive. In *Kortan*, the Ninth Circuit determined there was no hostile work environment when a supervisor called female employees "castrating bitches," "Madonna," or "Regina" on several occasions in the plaintiff's presence; the supervisor called the plaintiff "Medea"; the plaintiff complained about other difficulties with that supervisor; and the plaintiff received letters at home from the supervisor. *Id*. at 1107. The court held that while the supervisor's language was offensive, his conduct was not severe or pervasive enough to unreasonably interfere with the plaintiff's employment. *Id*. at 1111. Plaintiff has not presented any evidence that even rises to the level of the offensive and derogatory slurs made in *Kortan*, and accordingly the Court GRANTS defendant's motion for summary judgment and DENIES plaintiff's motion for partial summary judgment as it relates to this claim.

**II.     Race discrimination**

The parties debate whether plaintiff has made out a *prima facie* case of race discrimination, and if he has, whether plaintiff has evidence of pretext. Plaintiff has also filed a motion pursuant to Rule 56(f) asserting that there is outstanding discovery relevant to plaintiff's race discrimination claim, such as evidence about similarly situated individuals. On July 28, 2009, the parties informed the Court that they had resolved most of their pending discovery disputes, and have agreed to exchange discovery on

1 August 21, 2009.[5] In light of the ongoing discovery, the Court determines that the prudent course is to
2 allow the parties to complete discovery and then file supplemental summary judgment briefs specifically
3 addressing the following issues: (1) the evidence, if any, that defendant treated plaintiff differently than
4 similarly situated employees who do not belong to plaintiff's protected class, and (2) plaintiff's evidence
5 that defendant's reason for removing plaintiff is a pretext for discrimination.[6] For every "similarly
6 situated person" discussed in the parties' supplemental submissions, the parties shall address, in detail,
7 why that person is or is not similarly situated (e.g, the person's job duties, supervisors, GS level, etc.).[7]

### III. Age discrimination

To establish a *prima facie* case of age discrimination, plaintiff must show that (1) at the time he was fired he was over 40 years old, (2) he was otherwise qualified for the Auditor position, (3) he was discharged, and (4) he was replaced by a younger individual. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000); *see also Diaz v. Eagle Produce Ltd. Partnership*, 521 F.3d 1201, 1207-08 & n.2 (9th Cir. 2008). There is no dispute about the first and third factors, and as discussed above, the parties dispute whether plaintiff was otherwise qualified for his position.

However, neither party discusses the fourth factor, and the record does not appear to contain this information. If plaintiff was not replaced by a younger individual, that is a basis for finding that he has not established a *prima facie* case and granting summary judgment in favor of defendant on the ADEA claim. *See Diaz*, 521 F.3d at 1207 n.2 ("Generally, an employee can satisfy the last element of the prima

---

[5] This order addresses the discovery disputes that the parties were unable to resolve *infra*.

[6] The parties have already briefed, at length, the issues of whether plaintiff was adequately performing his job and the employer's "legitimate, nondiscriminatory reason for the employment decision," and thus there is no need to repeat this briefing in the supplemental submissions.

[7] Plaintiff asserts that two employees, Don Stevenson and Colleen Friesen, "were treated better than employees who were non-white; over 40; *and/or* disabled." Opposition at 6:24-25. The use of "and/or" is imprecise and does not aid the Court in its assessment of plaintiff's claims. If, for example, plaintiff contends that Mr. Stevenson and Ms. Friesen are similarly situated for purposes of plaintiff's race discrimination claim, plaintiff must show that these individuals are not members of plaintiff's protected class, that they are similarly situated with respect to job duties, and that they were treated differently than plaintiff in ways that are relevant to plaintiff's claims.

facie case only by providing evidence that he or she was replaced by a substantially younger employee with equal or inferior qualifications.").[8]

As with the race discrimination claim, the Court will defer ruling on plaintiff's age discrimination claim until discovery is complete and the parties have submitted supplemental briefs. The supplemental briefs should address whether plaintiff was replaced by a younger individual. If he was, the parties should also address what evidence, if any, suggests that plaintiff's removal was on account of his age. If plaintiff was not replaced by a younger individual, the parties should address whether plaintiff has established a *prima facie* case.

## IV.  Disability discrimination

Plaintiff's third claim for relief alleges disability discrimination in violation of the Rehabilitation Act of 1973, as amended by the Americans with Disabilities Act. The complaint alleges that defendant failed to engage in an interactive process with plaintiff after he requested reasonable accommodations, and that defendant unlawfully refused to provide plaintiff with his requested reasonable accommodations. The parties have briefed these issues at length, and the Court does not require further briefing on those issues. The Court will rule on the parties' motions with respect to the reasonable accommodation claim at the same time that the Court rules on the other claims.

Plaintiff's papers suggest that he may also be asserting an additional and separate claim that he was discriminated against on the basis of disability. For example, plaintiff's papers repeatedly assert that non-disabled employees received preferential treatment, and that disabled employees were discriminated against on the basis of their disabilities. It is unclear whether these assertions are made within the context of the reasonable accommodation claim, or if they are in connection with some separate claim. In plaintiff's supplemental submission, plaintiff shall clarify whether he is in fact asserting a disability discrimination claim that is separate from his reasonable accommodation claim,

---

[8] Courts have modified the *prima facie* test somewhat when the discharge takes place in connection with a reduction in force, which is not the case here. "The test for the prima facie case changes somewhat, however, where a discharge occurs in the context of a general reduction in the employer's workforce. In this context, circumstantial evidence other than evidence concerning the identity of a replacement employee may also warrant an inference of discrimination." *Id*.

9

and if so, what facts and evidence support such a claim. If plaintiff is asserting such a claim, defendant shall have the opportunity to respond in its supplemental submission.

## V.    Remaining discovery disputes

By joint letter filed July 28, 2009, the parties informed the Court of their positions on the remaining discovery disputes. This order resolves those remaining disputes.

### A.    Plaintiff's document request numbers 12, 13 and 49

These requests seek documents related to the "five day rule," the "three day rule," and requests for additional time or extensions of due dates for auditors. The Court agrees with defendant that to the extent these requests seek information for the entire Western Region, those documents are irrelevant and the burden and cost associated with such discovery is considerable. The documents that are relevant pertain to how plaintiff's supervisor applied the five and three day rules, because that information would either support or undercut plaintiff's claims of disparate treatment. The Court finds that defendant's meet and confer offer to search for team meeting notes from 2003-2006 reasonable, and orders defendant to respond to the document requests in accordance with the meet and confer offer.

### B.    Plaintiff's document request numbers 52, 53 and 54

These document requests seek the personnel files for plaintiff's supervisors who were involved in the decision to terminate plaintiff (Doris White, Steven Paul, and James Hayes). The parties dispute the relevance of these files, and defendant contends that plaintiff has had ample opportunity to conduct discovery regarding these individuals through depositions and through cross-examining them at the MSPB proceeding. Defendant also raises privacy concerns, and requests that if the Court is inclined to order production, the Court first conduct an *in camera* review.

The Court finds that because these supervisors were the individuals directly involved in the decision to terminate plaintiff, the personnel files potentially contain relevant information. The Court

orders defendant to produce those files in its possession[9] pursuant to the protective order, which addresses defendant's privacy concerns. If plaintiff wishes to file any documents from the produced personnel files, plaintiff shall do so under seal.

### C. Plaintiff's document request number 50

Plaintiff seeks documents related to the hiring of audit workers by DCAA from 2005 to the present for the entire Western Region, the area under Mr. Hayes' supervision. Plaintiff asserts that this request is relevant to his age, disability and race claims because this information "would disclose if white, non disabled employees under 40 years of age replaced Plaintiff, as well as provide relevant evidence regarding the hiring of minorities, individuals over 40 and disabled employees." Docket No. 175 at 8.

Defendant states that in the meet and confer process, defendant agreed to provide the following as limited to the East Bay Branch Office: the GS level; age; and, if voluntarily self-identified by the person on the new hire form, the race and disability status of the individuals hired throughout the East Bay Branch Office from 2005 to the present. Defendant has agreed to produce this information, although he contends that the information sought is largely irrelevant because plaintiff does not have a failure to hire or a failure to promote claim, and information after plaintiff's removal is not probative of any issue in this case.

The Court agrees with defendant and finds that plaintiff's request is overbroad and seeks a great deal of information which would be irrelevant. Plaintiff has not made any showing that the hiring data for the entire Western Region is relevant to any of his discrimination claims. Plaintiff does not allege a failure to hire or promote claim, nor is this a class action where such region-wide information could be relevant. Whether plaintiff was replaced by a younger individual is relevant to his age discrimination claim, and it is unclear from the parties' letter whether this information has been provided or is even in dispute. The Court also finds that information post-dating plaintiff's employment – except to the extent

---

[9] Defendant states that it is "informed and believes that it does not have access to personnel files of individuals that left the agency to work for another federal agency as the files follow the employee." Docket No. 175 at 8 n.10.

such information is limited to plaintiff's replacement, if any – is of limited relevance. Accordingly, the Court finds that defendant's offered response is adequate.

### D. Plaintiff's document request numbers 5 and 11

These requests seek information regarding responses to discrimination complaints made in the West Regional Office of the DCAA, as well as information regarding any supervisor in the Western Regional Office of the DCAA about whom an EEO complaint was made in the last five years. Defendant agreed only to provide complaints made against Ms. White, Mr. Paul and Mr. Hayes from 2003 to the present. Plaintiff contends that region-wide information is relevant because an employer's past discriminatory policy and practice "may well illustrate that the employer's asserted reasons for disparate treatment are a pretext for intentional discrimination." While plaintiff is entitled to this information as it relates to the three decisionmakers in this case (and as defendant agreed to produce), plaintiff has not made any showing how complaints involving supervisors in other offices could have any bearing whatsoever on plaintiff's individual discrimination claims. Again, this is not a class action. Accordingly, the Court directs defendant to produce the requested information only as it relates to plaintiff's supervisors for the 2003-2006 time period.

### E. Defendant's request for certifications

The Court DENIES this request. The Court expects that all counsel have met their discovery obligations in good faith, and have searched for and produced all responsive documents. To the extent these obligations have not been met, counsel may file appropriate motions.

### CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART defendant's motion for summary judgment, DENIES IN PART plaintiff's motion for partial summary judgment, and GRANTS plaintiff's Rule 56(f) motion. (Docket Nos. 98, 102, and 140).

The schedule for resolving the outstanding summary judgment issues is as follows. Defendant shall provide the discovery discussed above no later than **August 21, 2009**. Plaintiff shall file a

supplemental summary judgment brief of no longer than 15 pages on **September 4, 2009**; defendant shall file a response of no longer than 15 pages on **September 18, 2009**, plaintiff may file a reply on **September 25, 2009**, and the Court will hold a hearing on **October 7, 2009 at 10:00 am**.  To the extent that the parties' supplemental submissions cite evidence previously submitted, the parties need not refile that evidence, but shall simply cite the declaration, exhibit number and docket number of the cited exhibit (e.g, Dryovage Decl., Ex. A, Docket No. 110).

The October 13, 2009 trial date is VACATED and the trial is continued until November 2, 2009, or such other date as the Court and parties may agree upon.

**IT IS SO ORDERED.**

Dated: July 31, 2009

SUSAN ILLSTON
United States District Judge